UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

LARRY McADAMS, ET AL

VERSUS

CITIFINANCIAL MORTGAGE COMPANY,
INC. OF NEW YORK

CIVIL ACTION

NUMBER 06-27-JVP-SCR

**NOTICE**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have ten days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within ten days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, December 6, 2006.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

LARRY McADAMS, ET AL

VERSUS

CITIFINANCIAL MORTGAGE COMPANY,
INC. OF NEW YORK

CIVIL ACTION

NUMBER 06-27-JVP-SCR

**MAGISTRATE JUDGE'S REPORT**

Before the court is a Motion for Summary Judgment filed by defendant CitiFinancial Mortgage Company, Inc.  Record document number 7.  The motion is opposed.[1]

Plaintiffs Larry and Lisa McAdams filed this class action lawsuit seeking damages resulting from an alleged breached mortgage contract held by CitiFinancial.  In their original petition,[2] the plaintiffs asserted that they initially signed a promissory note with Ford Consumer Finance Company, Inc.  Plaintiffs alleged that CitiFinancial became the possessor of the promissory note after it merged with Ford Consumer Finance Company, Inc. and/or Associates Home Equity Services, Inc.  Plaintiffs claimed that they were charged excessive interest and/or late fees by the defendant when

---

[1] Record document number 37.  Defendant filed a reply memorandum.  Record document number 42.  Plaintiffs and defendant both filed supplemental memoranda.  Record document numbers 61 and 67, respectively.  Plaintiffs also filed a second supplemental memorandum.  Record document number 70.

[2] Record document 1, Notice of Removal, Exhibit A, Class Action Petition.

they paid off their mortgage loan in December 2004. Plaintiffs also asserted that these actions constituted breaches of contract, violations of the Fair Debt Collection Practices Act (FDCPA), violations of the Truth in Lending Act (TILA) and violations of the Real Estate Settlement Procedures Act (RESPA).[3]

Defendant moved for summary judgment. In support of its motion, the defendant relied on the affidavit of Jennifer Miller,[4] an executed promissory note,[5] an executed mortgage agreement,[6] a

---

[3] Plaintiffs' breach of contract and FDCPA claims were asserted in their original state court petition. Defendant's motion for summary judgment briefly referred to the plaintiffs' TILA and RESPA claims. Record document number 9, supporting memorandum, p. 1. These claims were not asserted in the original petition. Before the defendant filed its motion, the plaintiffs sought leave to amended their petition to include a TILA claim. Record document number 4. Their motion was granted in part, allowing the plaintiffs to assert their TILA claim. Record document number 23, ruling granting motion in part; record document number 24, Plaintiffs' First Supplemental and Amended Complaint for Damages. Plaintiff later moved again to amend, this time to formally assert and clarify their RESPA claim. Record document number 49. This motion was also granted. Record document number 58, ruling granting motion; record document number 59, Plaintiffs' Second Supplemental and Amended Complaint for Damages. Defendant asserted in its reply memorandum that its motion for summary judgment sought dismissal of the plaintiffs' claims in their original petition, not the claims in their amended petition filed after the defendant filed its motion. Record document number 42, reply memorandum, pp. 1-2. Therefore, this report does not address the plaintiffs' TILA and RESPA claims.

[4] Record document number 9, Exhibit 1.

[5] Record document number 9, Exhibit A.

[6] Record document number 9, Exhibit B.

loan history chart,[7] Defendant's Supplemental and Amended Responses to Plaintiffs' Discovery Requests,[8] supplemental affidavit of Jennifer Miller,[9] affidavit of Christie L. Doucet,[10] and a letter from the Federal Trade Commission dated November 9, 1992.[11]

Defendant argued that the interest charged at the time of the loan payoff was accurately calculated and included interest owed at the time of payoff and prior extensions of unpaid interest that were deferred. With respect to late fees, the defendant claimed that the plaintiffs were never charged more than $15.00 for any untimely monthly payment. Defendant provided calculations which demonstrated that late fees appearing on the loan history chart which are higher than $15.00 were actually the sum of separate late fees for individual late monthly payments. Defendant also asserted that it was not liable under the FDCPA because it does not qualify as a "debt collector" under the statute.

Plaintiffs argued in opposition that the defendant's failure to properly reduce the principal balance in accordance with the terms of the contract resulted in an overcharge of $688.70 in interest. Plaintiffs argued that, under the terms of the

---

[7] Record document number 9, Exhibit C.

[8] Record document number 42, Exhibit A.

[9] Record document number 42, Exhibit B.

[10] Record document number 67, Exhibit A.

[11] Record document number 67, Exhibit B.

promissory note, payments should have been applied to interest and the principal balance to make their account current before applying these funds to fees and/or expenses. Plaintiffs also asserted that the defendant's calculations of late fees were inconsistent. Plaintiffs argued that their own calculations, based on the terms of the promissory note and the Truth-in-Lending Disclosure Statement, demonstrated that they were overcharged $99.25 in late fees. Plaintiffs argued that the defendant was a "debt collector" because it was assigned the loan while it was in default, thereby making the defendant liable for violations of the FDCPA.

## Applicable Law

Summary judgment is only proper when the moving party, in a properly supported motion, demonstrates that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510 (1986). If the moving party carries its burden under Rule 56(c), the opposing party must direct the court's attention to specific evidence in the record which demonstrates that it can satisfy a reasonable jury that it is entitled to verdict in its favor. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. This burden is not satisfied by some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.

1994). In resolving the motion the court must review all the evidence and the record taken as a whole in the light most favorable to the party opposing the motion, and draw all reasonable inferences in that party's favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. The court may not make credibility findings, weigh the evidence or resolve factual disputes. *Id.*; *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059, 112 S. Ct. 936 (1992).

The substantive law dictates which facts are material. *Littlefield v. Forney Independent School Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). In their original petition, the plaintiffs alleged a breach of contract claim. The principles of contract interpretation provided under the Louisiana Civil Code are well-established. Interpretation of a contract is the determination of the intent of the parties. La. Civ. Code art. 2045. Except for technical terms, the words of a contract must be given their generally prevailing meaning. La. Civ. Code art. 2047. Each provision must be read in light of the others so that each is given the meaning suggested by the contract as a whole. La. Civ. Code art. 2050. If the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and the agreement must be enforced as written. La. Civ. Code art. 2046. Louisiana law bars parol evidence to evaluate unambiguous contractual intent. *Condrey*

5

*v. SunTrust Bank of Georgia,* 429 F.3d 556, 563 (5th Cir. 2005), *citing*, La. Civ. Code Ann. art. 2046.

If not otherwise resolvable, doubts or ambiguities as to the meaning of a contract are construed against the party who prepared it. *In re Liljeberg Enterprises, Inc.*, 304 F.3d 410, 439 (5th Cir. 2002), citing, La. Civ. Code art. 2056. Parol evidence is admissible when the written agreement is manifestly incomplete and is not intended to constitute the entire agreement between the parties. *Id.*, *citing*, *United Investors Life Ins. Co. v. Alexander*, 662 So.2d 831, 833 (La.App. 2nd Cir. 1995); *Edwards v. State of Louisiana Through the Dep't of Corrections*, 244 So.2d 69, 72 (La. App. 1st Cir. 1971).

Plaintiffs also alleged violations of the Fair Debt Collection Practices Act (FDCPA). Under the FDCPA, it is unlawful for debt collectors to use abusive tactics while collecting debts for others. *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985). A debt collector is defined in the FDCPA as "any person...who regularly collects or attempts to collect...debts owed or due or asserted to be owed or due another." *Id.*, *citing*, 15 U.S.C. § 1692a(6). The term "debt collector" does not include:

> **(F)** any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a

commercial credit transaction involving the creditor.

15 U.S.C. § 1692a(6)(F).

"The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." *Perry*, 756 F.2d at 1208, *citing*, S.Rep. No. 95-382, 95th Cong., 1st Sess. 3, reprinted in 1977 U.S.Code Cong. & Ad.News 1695, 1698 and *Kizer v. Finance America Credit Corp.*, 454 F.Supp. 937, 939 (N.D.Miss. 1978).

Under the FDCPA, a creditor is defined as follows:

**(4)** The term "creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

15 U.S.C.A. § 1692a(4).

## Analysis

**Consideration of the Plaintiffs' Supplemental Brief**

Defendant asserted that the plaintiffs were permitted to file a supplemental opposition memorandum based on their need to incorporate evidence obtained from a then-pending Motion to Compel.[12]  Defendant argued that the plaintiffs abused the court's

---

[12] *See*, record document number 35, Plaintiffs' Motion for Leave to Supplement Its Opposition Brief to CitiFinancial's Motion for
(continued...)

7

order granting leave and violated Rule 15, Fed.R.Civ.P.[13] because the bulk of their supplemental memorandum was not based upon information resulting from their motion to compel, which was essentially denied.[14]  Defendant argued that because the supplemental opposition was based solely on information and documents available at the time the original opposition was filed, it should not be considered in the court's analysis.

Defendant's argument is unpersuasive.  A review of the plaintiff's Motion for Leave shows that their request for a supplemental memorandum was based on discovery other than the receipt of responses from their Motion to Compel.[15]  Moreover, the

---

[12](...continued)
Summary Judgment; record document number 38, Order granting Motion for Leave; record document number 27, Motion to Compel.

[13] Rule 15(d), Fed.R.Civ.P. provides:
Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense. If the court deems it advisable that the adverse party plead to the supplemental pleading, it shall so order, specifying the time therefor.

[14] Pursuant to the plaintiffs' Motion to Compel, the defendant was only required to produce a complete copy of a document produced in a redacted form.

[15] Record document number 35, Plaintiffs' Motion for Leave to Supplement Its Opposition Brief to CitiFinancial's Motion for Summary Judgment.  Plaintiffs asserted that they were waiting on receipt of documents requested in Jennifer Miller's Notice of
(continued...)

defendant has not demonstrated any prejudice caused by the scope or length of the plaintiffs' supplemental memorandum.

**Breach of Contract Claim**

With respect to the plaintiffs' claims for breach of contract, the defendant asserted that the plaintiffs cannot establish that they were overcharged interest or late fees. Defendant argued specifically that the way it applied the plaintiffs' payments and calculated late fees did not violate any term of the promissory note.

In support of the plaintiffs' argument that they were overcharged interest, the plaintiffs relied on the language from the promissory note which states that "[e]ach payment I make will be applied first to interest owed to the date of payment and the remainder to the principal balance."[16] Plaintiffs argued that this provision allowed the defendant to apply surplus payment funds to accrued late charges only if their account was current both in interest and principal at the time of payment. Plaintiffs' expert John M. Evans determined that on 32 separate occasions portions of the plaintiffs' monthly mortgage payment was applied to late fees

---

[15](...continued)
Deposition served on May 31, 2006, and that their experts requested extra time to properly prepare their reports and supporting documents.

[16] Record document number 9, Exhibit A, promissory note, (hereafter, allocation provision).

9

when the plaintiffs' loan was not current.[17]  Plaintiffs argued that by failing to properly reduce the principal balance, the plaintiffs were overcharged $688.70 in interest.[18]

Defendant rejected this interpretation of the promissory note. Defendant argued that the note did not prohibit applying a portion of any payment to late fees lawfully owed by the plaintiffs. Defendant asserted that the provision cited by the plaintiffs should not be read in isolation.  Defendant argued that it should be read in conjunction with the following language in the promissory note which addresses payment of a late fee:

> Failure to pay any payment of this Note or to fulfill any of the obligations herein undertaken shall, at the option of the holder hereof, without demand or notice, mature all remaining payments, and the holder will have the right to enforce, by suit or otherwise, payment of the balance, with interest, costs and attorneys' fees, as specified below.  In the event of default of any payment for a period of more than ten (10) days, the signers agree to pay a delinquency charge in an amount equal to five (5%) of the unpaid amount of the payment in default

---

[17] Record document number 61, Exhibit B, attached expert report of John M. Evans.

[18] Plaintiffs' expert also opined that this interpretation of the promissory note was consistent with the national standard used in the mortgage industry to allocate mortgage payments. Plaintiff's expert stated that funds are generally applied in the following order: 1) current interest due, 2)current principal due, 3)payments in arrears, 4)late payment/fees, 5)NSF fees, and 6)principal.  Plaintiff also noted that this late payment fee allocation method is recognized by HUD as part of its federal regulatory guidelines.  Because neither party asserts that the contract was ambiguous it is unnecessary to consider these contentions.

10

or $15.00, whichever is less.[19]

Defendant argued that the plaintiffs' interpretation of the late fee provision renders it meaningless because their interpretation prevents the collection of late fees. Defendant also noted that the plaintiffs' logic ignores the purpose of late fees, which is to provide an incentive for timely payments and to reimburse creditors for increased collection costs.

Careful consideration of the parties' exhibits and arguments supports finding that the defendant has failed to establish that the late fee provision it relies upon creates any modification, exception, or other ambiguity in the allocation provision. A plain reading of the allocation provision requires that loan payments be applied first to the current interest owed and the remainder to the principal balance. The late fee provision does not provide a collection method or an exception to the allocation provision.

Defendant's argument that the plaintiffs' interpretation of the contract would bar the collection of late fees is unpersuasive. The allocation provision does not prevent the defendant from assessing and collecting late fees through other methods, e.g. accumulating unpaid late fees for collection when the loan is paid off or billing late fees separately. Defendant is only prohibited from collecting late fees out of the monthly loan payment.

---

[19] Record document number 9, exhibit A, promissory note, (hereafter, late fee provision).

Plaintiffs' interpretation does not negate the remaining provisions in the contract or lead to any absurd consequences.

Defendant also argued that the plaintiffs were not overcharged interest because the daily interest charges were based on a principal balance reduced by granting extensions on past-due interest. Defendant claimed that the plaintiffs ultimately received a benefit of $3,565.15, which outweighed any allegedly overcharged interest.

This argument is also unpersuasive. Plaintiffs' breach of contract claim depends on whether the defendant complied with the express terms of the contract. Defendant did not establish that the parties agreed to alter the terms of the contract in exchange for the extensions or that the extensions were specifically granted as a result of the alleged breach. Defendant has not shown that damages were not incurred as a result of the defendant's alleged failure to properly allocate the monthly loan payments in accordance with the terms of the note.

Plaintiffs presented a calculation of the amount of interest which would have been charged if the late fees had not been deducted from the monthly loan payment. This calculation demonstrated that the principal balance would have been reduced and less interest would have been charged. Because the defendant failed to demonstrate that the contract explicitly permits the collection of the late fees from the plaintiffs' monthly loan

payment, a genuine issue of material fact exists as to the proper interest charged in accordance with the terms of the promissory note.

Defendant has also failed to satisfy its summary judgment burden with respect to the plaintiffs' claim that they were overcharged late fees. To show that the late fees were proper, the defendant provided evidence which detailed the computation of each late fee charged as reflected on the loan history chart.[20] Defendant claimed that these calculations demonstrate that the late fee for any single monthly payment never exceeded the maximum allowable amount.

This argument is contradicted by the calculations provided by the plaintiffs' expert which demonstrate that, pursuant to the terms of the note, the amount of late fees that should have been charged was $99.25 less than what was actually charged.[21] Because the court cannot resolve such conflicts or weigh the evidence on summary judgment,[22] the defendant has failed to establish the absence of any genuine issue of material fact regarding whether the

---

[20] Record document number 9, Exhibit 1, affidavit of Jennifer Miller, ¶¶ 10-15.

[21] Record document number 61, exhibit B, attached expert report of John M. Evans, pp. 7-8 and exhibit 5.

[22] At the summary judgment stage, a court may not weigh the evidence or evaluate the credibility of witnesses. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998), *citing*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14,(1986).

proper amount of late fees were charged in accordance with the terms of the note.

**FDCPA Claim**

In their original petition the plaintiffs asserted that the defendant violated sections 807(2)(A) and 808(1) of the FDCPA.[23] Both of these sections target the improper actions of "debt collectors." Plaintiffs relied on *Schlosser v. Fairbanks Capital Corp.* to establish that as an assignee of a loan in default at the time of assignment, the defendant is a "debt collector" subject to the FDCPA. Plaintiffs provided various documents which allegedly demonstrated that the defendant was assigned the rights to the plaintiffs' loan as a result of a merger between Citigroup, Inc.

---

[23] Section 807(2)(A) of the FDCPA is found at 15 U.S.C. § 1692e, which states in relevant part:
> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> . . .
> **(2)** The false representation of-
> **(A)** the character, amount, or legal status of any debt;

Section 808(1) is found at 15 U.S.C. § 1692f, which states in relevant part:
> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> **(1)** The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

and the Associates.[24] Plaintiffs also referred to the loan history chart to show that the loan was in default at the time of the assignment.[25]

Defendant claimed that it is entitled to summary judgment on the FDCPA claims because it was a "creditor" of the plaintiffs and therefore is not subject to the FDCPA. To establish that creditors are not debt collectors under the FDCPA, the defendant relied on § 1692a(6)(A) which states that the term "debt collector" does not include "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor."[26] This subsection provides an exemption for a creditor's individual officers or employees from the FDCPA rather than generally excluding creditors from debt collector status. Since the plaintiffs have not alleged a claim against any officer or employee

---

[24] Record document number 61, supplemental opposition memorandum, Exhibit K, Merger Agreement; Exhibit L, Amended Merger Agreement; Exhibit N, Willumstad letter; Exhibit O, Weill letter; and Exhibit P, Response to Public Comments. Plaintiffs asserted that CitiFinancial was a wholly owned subsidiary or Citicorp, Inc., which is a wholly owned subsidiary of Citigroup, Inc.

[25] Plaintiff asserted that the acquisition of the Associates was completed on November 30, 2000 and that the chart shows that the loan was not current as of November 20, 2000.

[26] Defendant also cited various cases to demonstrate that creditors who attempt to collect their own debts are not considered debt collectors under the FDCPA. *See*, *McZeal v. Ocwen Financial Corp.*, 252 F.3d 1355 (5th Cir. 2001); *Nielsen v. Dickerson*, 307 F.3d 623, 634 (7th Cir. 2002); and *Brincks v. Taylor*, 2002 WL 63024 (N.D.Tex. Jan. 8, 2002). A review of these cases shows that they are factually distinguishable, and do not involve a creditor who obtains a debt in default.

15

of CitiFinancial, this subsection is inapplicable.

Although the FDCPA separately defines "debt collectors" and "creditors," it also covers situations where a creditor attempting to collect its own debts becomes a "debt collector" subject to the statute.[27] The notion that one can satisfy the definition of a "creditor" yet still be classified as a "debt collector" is supported by the Fifth Circuit's holding in *Perry* which recognized that the term "debt collector" would not include a consumer's creditor which is assigned a debt not in default.[28] Likewise, the legislative history of the FDCPA states that the Act does not include "the collection of debts, such as mortgages and student loans, by persons who originated such loans; mortgage service companies and others who service outstanding debts for others, so long as the debts were not in default when taken for servicing."[29] Based on these considerations, the term "debt collector" includes a "creditor" who did not originate a loan but later obtained the debt while it was in default.[30] Satisfying the definition of

---

[27] *See*, § 1692a(6); *Mendoza v. Experian Information Solutions, Inc.*, 2003 WL 2005832 (S.D.Tex. Mar. 25, 2003).

[28] *Perry*, 756 F.2d at 1208.

[29] S.Rep. No. 95-382, 95 Cong., 1 Sess. 3, reprinted in 1977, U.S. Code Cong. & Ad.News 1695, 1698.

[30] *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534 (7th Cir. 2003). While not controlling, *Schlosser* provided a persuasive analysis and stated in pertinent part:
   [F]or debts that do not originate with the one attempting
(continued...)

"creditor" under § 1692a(4) does not conclusively establish the defendant's exemption from the FDCPA.

In the alternative, the defendant asserted the plaintiff cannot maintain their FDCPA claim because the plaintiff cannot show that the defendant obtained a loan in default.  A review of the parties' evidence and arguments shows that a material issue of fact exists as to whether the defendant obtained a loan in default owed by the plaintiffs.  The critical language is found in § 1692a(6)(F)(iii) of the FDCPA, which states that the definition of a debt collector does not include any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity "concerns a debt which was not in default at the time it was obtained by such person."

Defendant claimed that it could not be a "debt collector"

---

[30](...continued)
collection, but are acquired from another, the collection activity related to that debt could logically fall into either category. *If the one who acquired the debt continues to service it, it is acting much like the original creditor that created the debt. On the other hand, if it simply acquires the debt for collection, it is acting more like a debt collector.* To distinguish between these two possibilities, the Act uses the status of the debt at the time of the assignment...In other words, the Act treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not. *Schlosser*, 323 F.3d at 536.
Defendant argued that the italicized portion highlights the inapplicability to this case.  However, when read in context with the remaining quote it is clear that these statements are dicta and do not rigidly define creditors and debt collectors.

under § 1692a(6)(F)(iii) because the debt was not "obtained," that is, there was no assignment of the plaintiffs' promissory note/mortgage between the Associates and CitiFinancial. Rather, the Associates merely changed its name to CitiFinancial. Not only did the defendant fail to provide any documented evidence of this "name-change", several courts have previously rejected limiting the definition of "obtained" to an "assignment" or "transfer."[31] Section 1692a(6)(F)(iii) requires that the defendant be in the business of regularly servicing alleged outstanding debts and obtain the right and responsibility for collecting the debt before the borrower defaults.[32] This statutory interpretation is supported by the language of the statute and the FDCPA's legislative history.[33]

The undisputed facts show that the plaintiffs' loan was

---

[31] *See*, *Hamilton v. Trover Solutions, Inc.*, 2003 WL 21105100, 4 (E.D.La. May 13, 2003)(the definition of "obtain" under § 1692a(6)(F)(iii) was not limited to establishing the transfer or assignment of debt), citing, Kvassay v. Hasty, 236 F.Supp.2d 1240, 1270 (D.Kan. 2002) and *Franceschi v. Mautner-Glick Corp.*, 22 F.Supp.2d 250, 254 (S.D.N.Y. 1998).

[32] *Id*.

[33] Both parties focused on whether the note was "assigned." The use of this language originates from *Perry*, which stated that "a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was *assigned*." *Perry* did not address a situation, as here, where the creditor alleges that there was not a legal assignment or transfer of debt. The *Perry* holding does not conflict with a broader definition of the term "obtain."

18

originated by another lender and subsequently serviced by CitiFinancial.[34]  Defendant did not dispute the plaintiffs' contention that their loan was in default at the time of the merger.  Moreover, the plaintiffs provided evidence which indicated that CitiFinancial was an existing business entity prior to the Associates merger.[35]  Based on these facts, the defendant has not established that it did not obtain the plaintiffs' debt while the debt was in default.  Thus, there are genuine issues of material fact with respect to the defendant's debt collector status and liability under the FDCPA.

### Recommendation

It is the recommendation of the magistrate judge that the Motion for Summary Judgment filed by CitiFinancial Mortgage Company, Inc. be denied.

Baton Rouge, Louisiana, December 6, 2006.

*signature*

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

---

[34] While neither party has provided any evidence which establishes that the lender referenced on the promissory note is a subsidiary of the Associates, the defendant did not dispute this fact.

[35] *See*, record document number 61, Exhibits N, O, and P.  While these documents were not authenticated by the plaintiffs, the defendant did not dispute their authenticity.